HARLEY ATKINSON V. STATE OF NEBRASKA.

FILED MARCH 22, 1899.   No. 10527.

1. **Criminal Law**: INSTRUCTIONS: REASONABLE DOUBT. In a felony case it is reversible error for a court to charge the jury that it may find the defendant guilty if it entertain a reasonable doubt of the truth of each or all of the material allegations of the indictment.

2. ——: ——: ——. The law is that if the jury entertain a reasonable doubt as to the truth of any material allegation of the indictment, the prisoner is entitled to an acquittal.

3. **Assault**: JUSTIFICATION. When a citizen assaults one of a mob in the wrongful possession of and taking away his property for the purposes of injuring or destroying it, whether under all the circumstances he was justified in making the assault is a question for the jury.

4. **Hallowe'en**: PROTECTION OF PROPERTY FROM MOB: ASSAULT. An assemblage of men on Hallowe'en—night of October 31—engaged in moving, injuring, and destroying property is a mob engaged in violating the law, and the citizen may use such force as is actually necessary to protect his person and property from injury at its hands.

ERROR to the district court for Dawson county. Tried below before WESTOVER, J. *Reversed.*

*G. W. Fox* and *E. A. Cook,* for plaintiff in error.

*C. J. Smyth, Attorney General,* and *W. D. Oldham, Deputy Attorney General,* for the state.

RAGAN, C.

Harley Atkinson, in the district court of Dawson county, was indicted for having on November 1, 1898, in said county, assaulted one William King with intent.

then and there to inflict upon him great bodily harm. Atkinson was convicted, and to reverse the judgment pronounced thereon he has filed here a petition in error. The evidence, and especially that on behalf of the prisoner, tends to show that Atkinson lived with his family in Cozad, Nebraska, and on October 31, 1898, was operating a threshing-machine some six miles from his home. On the evening of that day he borrowed a buggy from the man for whom he was threshing, in which he drove to his home, which he reached about 9 o'clock at night. There was no place in his barn where a buggy could be stored, and he left it standing against the outside of his barn. During the night a crowd of men were parading the streets of Cozad, disturbing and injuring property and ignoring the efforts of the officers of the law and others to restrain them. Wagons, buggies, and water-closets were being moved and hauled away, and in some instances broken and injured by this crowd. The crowd wished to get possession of the buggy in which the prisoner had ridden to town. Some of the crowd tried to get the buggy about 10 o'clock that evening. The prisoner fired a gun over them at this time to frighten them away, and this enraged the crowd and it threatened to get possession of the prisoner's buggy at all hazards and to destroy it. The prisoner heard these threats. Some persons in the crowd threatened to shoot the prisoner, and to whip him, and some of the crowd tried to get hold of the prisoner for the purpose of hurting him. The prisoner knew of these threats and attempts. This crowd was repeatedly warned by the prisoner and others that the prisoner would shoot if an attempt was made to take his buggy. The crowd replied that they would have it if they did get shot, and that when they did get it they would destroy it. This disorderly mob paraded around until between 3 and 4 o'clock in the morning. At that time a man named King, one of the crowd, followed by the others thereof, took hold of the buggy and started to run away with it. The prisoner called to him to drop

it. This King refused to do. The prisoner then fired a gun over him with a view of frightening him. King still retained possession of the buggy and was moving off with it, when the defendant intentionally shot him in the leg with a shotgun, inflicting a flesh wound. The prisoner believed at the time he shot King that the crowd intended to immediately destroy the buggy if King got away with it, and he shot him for the purpose of stopping him and preventing the crowd from taking the buggy away and destroying it. The prisoner at this time was afraid to leave his house to procure an officer of the law to protect his property, because he was afraid of violence at the hands of this mob.

On the trial the district court, after instructing the jury as to the material allegations of the information, charged them as follows: "You are instructed that if you are convinced by the evidence, beyond a reasonable doubt, of the truth of each and all of said material allegations, then you may find the defendant guilty. If not so convinced, or if you entertain a reasonable doubt of the truth of each or all of said material allegations, then you should find the defendant not guilty." The giving of this instruction was prejudicially erroneous. By it the court in effect told the jury that to entitle the defendant to an acquital they must entertain a reasonable doubt as to the truth of each or all of the material allegations of the information. This is not the law. On the contrary, the law is that if the jury entertain a reasonable doubt as to the truth of any material allegation of the information, the prisoner is entitled to an acquittal.

Another instruction given by the court was as follows: "The court instructs the jury that an assault is an unlawful attempt coupled with the present ability to commit a violent injury upon another; and in this case, unless the jury believe from the evidence beyond a reasonable doubt that the defendant shot William King with a loaded shotgun, intending to shoot him and with the then present ability to shoot him, then the jury should

find the defendant not guilty." This instruction, in view
of the evidence, was wrong. The prisoner did not con-
tend that he did not shoot William King with a loaded
shotgun, nor that he did not intend to shoot him, nor
that he did not then and there have the present ability
to shoot him, but the defense was that he shot him in de-
fense of his property, and resorted to this means because
he was afraid to leave his house to procure the assistance
of the officers of the law for the protection of his prop-
erty, as he feared that if he did so he would receive great
bodily injury at the hands of this mob. By the instruc-
tion last quoted the court in effect took this defense of
the prisoner from the jury and told them to convict the
prisoner if they found that he, with ability to shoot, in-
tentionally shot King with a loaded shotgun. We do
not decide whether the prisoner was, under the circum-
stances detailed in the evidence, justified in shooting
King. Whether he was or not was a question of fact
for the jury, and this defense the prisoner was entitled to
have the jury pass upon; and by the instruction un-
der consideration the court took that theory entirely
from the jury and in effect instructed them to find him
guilty. We are not justifying the possessor of property
for shooting one who is committing a trespass thereon.
But here was a man in his own home, in the peaceable
and quiet possession of his property. A howling mob of
brawlers, masquerading under the name of "Hallow-
e'eners," is parading the streets of his town injuring and
destroying property, threatening to take the property of
this prisoner and destroy it, threatening him with bodily
injury if he interferes, and this mob takes possession of
his property and attempts to take it away. It was for
the jury to say whether the prisoner, as a reasonable hu-
man being, was justified under the circumstances in mak-
ing the assault he did for the purpose of protecting his
property, for he certainly had the right to protect his
own. The fact that this crowd was observing the bar-
barous practice of committing mischief and depredation

on the evening of October 31 did not deprive the prisoner of the right to defend himself and his property against their unlawful attacks, for no matter under what name they may have masqueraded, the crowd was a mob violating the law, and the county attorney of Dawson county would do no more than his duty if he caused each member of this crowd of midnight marauders to be indicted and punished. For the errors pointed out in the instructions the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.